NANCY HOFFMEIER ZAMORA (State Bar No. 137326)
U.S. Bank Tower
633 West 5th Street, Suite 2600
Los Angeles, California   90071
(213) 488-9411   FAX:   (213) 488-9418
e-mail:  zamora3@aol.com

Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | Case No. 1:10-11624-KT |
| MADERA ROYAL, LLC, | Chapter 7 |
| Debtor. | MOTION FOR ORDER AUTHORIZING TRUSTEE TO SELL REAL PROPERTY FREE AND CLEAR OF LIENS, SUBJECT TO OVERBID; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF NANCY HOFFMEIER ZAMORA |
| | [FILED CONCURRENTLY WITH EX PARTE APPLICATION FOR ORDER SHORTENING TIME] |
| | DATE:  To be set |
| | TIME:  To be set |
| | CTRM:  301 |

Nancy Hoffmeier Zamora, Chapter 7 Trustee ("Trustee") of the

bankruptcy estate (the "Estate") in the above-captioned chapter 7

bankruptcy case (the "Case") of debtor Madera Royal, LLC

("Debtor") hereby respectfully moves the Court for an order

approving sale of that certain commercial real property commonly

known as 1424 Madera Road, Simi Valley, California 93065 (the

"Real Property"), free and clear of any interests and liens

pursuant to 11 U.S.C. §§ 363(b), (f) and (m), and on an "AS-IS,

WHERE-IS" basis, to Cowboy & Company LLC and/or its assigns

("Buyer") for a sales price of $2,225,000.00 (the "Sales Price")

through escrow for sale of the Real Property (the "Sale Escrow")

and on the other terms and conditions set forth in that certain

First Amended Purchase and Sale Agreement and Escrow Instructions

(Commercial Real Property) dated as of June 7, 2010 (the

"Agreement"), or to the highest qualified bidder pursuant to the

overbid procedure described below (the "Highest Bidder").

A true and correct copy of the Agreement is attached as

Exhibit A to the Declaration of Nancy Hoffmeier Zamora (the

"Declaration") attached hereto and incorporated herein by

reference.

Trustee also moves for approval and authorization (a) to

execute any and all documents necessary to transfer the Real

Property from the Estate to Buyer, or to the Highest Bidder,

including assignment of the two current commercial leases, and

(b) to pay the debt secured by the first deed of trust (the

"First Trust Deed") for the benefit of Wells Fargo Bank

("Wells"); the debt secured by the second deed of trust (the

"Second Trust Deed") for the benefit of CDC Small Business

Finance/U.S. Small Business Administration ("CDC/SBA") in the

reduced amount agreed to by CDC/SBA; delinquent and current pro-

rated real property taxes; invoices for property insurance,

clean-up, repair and maintenance services; seller's closing costs

including, but not limited to, a broker's commission of 3.5% of

the Sales Price, transfer taxes, escrow, title and recording

fees, and any other valid liens through the Sale Escrow at Encore

Escrow ("Encore").  With the assistance of Encore, Trustee

1  calculates that the net proceeds to be paid to the Estate from

2  the Sale Escrow will be approximately $51,289.25.

3      Further, Trustee requests that the Court's order (the "Sale

4  Order") include a finding that Buyer or the Highest Bidder is a

5  "good faith purchaser" pursuant to Bankruptcy Code §363(m).

6      This motion (the "Motion") is based on the notice of motion

7  (the "Notice") filed with this Court and served on Debtor,

8  Debtor's counsel, the United States Trustee, all creditors, and

9  other interested parties, and on the memorandum of points and

10  authorities and the Declaration, including exhibits, attached

11  hereto.

12      Trustee proposes the following overbid procedure be used at

13  the hearing on this Motion (the "Hearing") for the purpose of

14  considering bids:

15      i.   Each potential bidder (other than Buyer) in order to

16  qualify as a bidder at the Hearing, shall

17      (1) prior to the commencement of the Hearing, present to

18  Trustee a cashier's check in the amount of Seventy-Five Thousand

19  Dollars ($75,000.00) (the "Earnest Money Deposit") made payable

20  to Encore Escrow or Cash.  Trustee shall refund the Earnest Money

21  Deposit if she accepts the bid of another bidder;

22      (2)  a completed and executed written offer to purchase

23  signed by the bidder that contains terms and conditions that are,

24  in Trustee's business judgment, similar or superior to the terms

25  and conditions of the offer by Buyer generally described above

26  and specifically contained in the Agreement;

27      (3)  prior to the commencement of the Hearing, offer proof

28  that the bidder has the financial ability to pay, within two (2)

business days after entry of the Sale Order approving sale of the

Real Property to the Highest Bidder, the balance of any bid made

by such bidder, such proof to be deemed acceptable or

unacceptable by Trustee in her sole discretion, subject to

approval by the Court; and

     (4)   attend the Hearing; and

     ii.  The initial overbid shall be a total of $2,250,000.00,

i.e., $25,000.00 more than the Sales Price, and all additional

overbids must be made in minimum increments of $10,000.00.

If the Highest Bidder fails to close the Sale Escrow within

ten (10) days of entry of the Sale Order, the Highest Bidder

shall forfeit the Earnest Money Deposit and the next highest

bidder shall pay the next highest bid to purchase the Real

Property.

DATED: June 16, 2010

_____
Nancy Hoffmeier Zamora
Chapter 7 Trustee

## MEMORANDUM OF POINTS AND AUTHORITIES

This Memorandum of Points and Authorities is submitted in support of the Motion to Sell Real Property Free and Clear of Liens, Subject to Overbid (the "Motion") to which it is attached. The capitalized terms have the meanings ascribed to them in the Motion unless otherwise defined herein.

### I.   FACTS

1.   On February 13, 2010 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code commencing the Case.

2.   The primary asset of the Estate is the Real Property.

3.   Debtor listed the current fair market value of the Real Property as $3,000,000.00 on its Schedule A.  Debtor listed the total debt secured by the Real Property in an aggregate amount of $3,155,686.80 on its Schedule A and Schedule D.   Debtor listed the balance of the debt secured by the First Trust Deed for the benefit of Wells at $1,655,686.80 and the balance of the debt secured by the Second Trust Deed for the benefit of CDC/SBA at $1,500,000.00 on Debtor's Schedule D.  Debtor did not list the delinquent real property taxes. True and correct copies of Debtor's Schedules A and D are attached as Exhibit B to the Declaration and incorporated herein by reference.

4.   According to the preliminary title report prepared by Progressive Title Company, order no. PR1080472, dated as of March 12, 2010 (the "PTR"), Debtor is the only title holder for the Real Property.  According to the PTR, title to the Real Property is vested in the name Madera Royal, LLC, A California Limited Liability Company.  A true and correct copy of the PTR is

attached as Exhibit C to the Declaration and incorporated herein by reference.

5.   On April 16, 2010, the Court entered that certain order (the "Employment Order") approving Trustee's employment of Rodeo Realty, Inc. ("Rodeo") as real estate broker for the Estate to market and sell the Real Property effective as of March 31, 2010. Rodeo listed and actively marketed the Real Property for sale. Rodeo informed Trustee regarding all showings of the Real Property and all inquiries by real estate agents and potential buyers related to the Real Property.  Rodeo presented all written offers to Trustee.  Trustee, through Rodeo, negotiated a counter-offer with Buyer as memorialized in the Agreement.  Buyer's response to Trustee's counter-offer, set forth with its terms in the Agreement, was the highest and best offer Trustee received as of June 15, 2010.  The Employment Order provides for a broker's commission to be calculated based on 6% of the gross sales price for the Real Property.  However, Rodeo has agreed to reduce the broker's commission to 3.5% of the gross sales price for the Real Property in order to obtain CDC/SBA's reduced payoff demand and consent to sale of the Real Property.

6.   Trustee desires to maximize distributions to creditors of the Estate by selling the Real Property free and clear of liens and on an "AS-IS, WHERE-IS" basis to Buyer for the Sales Price of $2,225,000.00 and pursuant to the other terms set forth in the Agreement or to the Highest Bidder at the Hearing if Buyer is not the Highest Bidder.  A true and correct copy of the Agreement is attached as Exhibit A to the Declaration and incorporated herein by reference.

7.    Trustee believes that the Sales Price offered by Buyer is the highest and best offer, considering current market conditions and the marketing efforts of Rodeo, including listing of the Real Property on Loopnet and multiple showings of the Real Property to agents and potential buyers.

8.    Trustee has no relationship to or with Buyer and is not related to Buyer in any manner.  Trustee has reviewed Debtor's schedules and the claims register and claims filed in the Case. Based on this review, Trustee has determined that Buyer is not a creditor of the Estate.  Trustee believes that Buyer is a good faith purchaser.  Trustee and Buyer negotiated at "arms-length."

9.    Trustee has been provided with all requested information from Rodeo necessary to satisfy her that the immediate sale of the Real Property to Buyer is in the best interest of the Estate.

10.   On or about February 25, 2010, Wells filed and served a motion for relief from stay (the "Wells Motion").  Trustee contacted counsel for Wells regarding Trustee's appointment (Diane C. Weil initially was appointed as interim trustee) and Trustee's intent to market and sell the Real Property.  Trustee and counsel for Wells appeared at the initial hearing on the Wells Motion on March 18, 2010.  The Court continued the hearing to April 13, 2010.  Trustee requested that Wells withdraw the Wells Motion or stipulate to a continuance that would allow Trustee time to market the Real Property.  Wells refused. Trustee filed an opposition.  On April 13, 2010, Trustee and counsel for Wells appeared at the continued hearing.  At the continued hearing, counsel for Wells withdrew the Wells Motion.

11.   Escrow has obtained payoff demands from Wells and CDC/SBA.  The total payoff demand for Wells, calculated through July 9, 2010, is $1,840,558.24 (the "Wells Demand").  The payoff demand from CDC/SBA is in the reduced amount of $40,000.00 (the "CDC/SBA Demand").  These amounts are included in the estimated closing statement (the "Estimated Closing Statement").  A true and correct copy of the CDC/SBA Demand is attached as <u>Exhibit D</u> to the Declaration and incorporated herein by reference.  A true and correct copy of the Estimated Closing Statement, with the HUD statement, is attached as <u>Exhibit E</u> to the Declaration and incorporated herein by reference.

12.   Trustee received invoices for clean-up, repair and maintenance costs in the amount of $8,780.00 from Gerardo Garcia (the "Garcia Invoices").  Mr. Garcia performed such services at the request of Trustee in order to prepare the Real Property for marketing, to maximize the value of the Real Property, and to respond to concerns of the two commercial tenants at the Real Property.  Trustee received an invoice for the insurance premium for the Real Property in the amount of $11,695.96 from Trustee Insurance Agency (the "Insurance Invoice").  Trustee requests that the Garcia Invoices and the Insurance Invoice be paid through the Sale Escrow.  A true and correct copy of the Garcia Invoice is attached as <u>Exhibit F</u> to the Declaration and incorporated herein by reference.  A true and correct copy of the Insurance Invoice is attached as <u>Exhibit G</u> to the Declaration and incorporated herein by reference.

13.   Encore prepared the Estimated Closing Statement to assist Trustee with analysis of the amounts to be paid through

1    the Sale Escrow from the Sales Price.   A true and correct copy of

2    the Estimated Closing Statement, with the HUD statement, is

3    attached as Exhibit E to the Declaration and incorporated herein

4    by reference.

5         14.   As described herein and in the exhibits attached to the

6    Declaration, the Sales Price ($2,225,000.00) exceeds:

7         a.    debt secured by the First Trust Deed recorded against

8               the Real Property for the benefit of Wells (see PTR

9               item no. 12) calculated in the amount of $1,840,558.24

10              through July 9, 2010 as included in the Estimated

11              Closing Statement based on the Wells Demand (see

12              Exhibit C and Exhibit E to the Declaration);

13        b.    debt secured by the Second Trust Deed recorded against

14              the Real Property for the benefit of CDC/SBA (see PTR

15              item no. 13) in a reduced amount of $40,000.00 based on

16              the CDC/SBA Demand as included in the Estimated Closing

17              Statement (see Exhibit C, Exhibit D, and Exhibit E to

18              the Declaration)

19        c.    all delinquent and pro-rated real property taxes (PTR

20              items A, B, C and D) owed to Ventura County in the

21              approximate amount of $183,646.05 (see Exhibit C);

22        d.    the Garcia Invoices for clean-up, repair and

23              maintenance costs in the amount of $8,780.00 (see

24              Exhibit E and Exhibit F);

25        e.    the Insurance Invoice in the amount of $11,695.96 (see

26              Exhibit E and Exhibit G);

27        f.    Seller's closing costs consisting of the 3.5% broker's

28              commission of $77,875.00 based on the Sales Price, plus

other closing costs including, but not limited to,
applicable city and county transfer taxes, one-half of
the escrow fee, title fees for a title insurance
policy, and recording costs (collectively, the "Other
Closing Costs" of approximately $11,155.50.00).

15.   In summary, $2,225,000.00 exceeds approximately
$2,173,710.75, the sum of the amounts set forth above.  The
amounts set forth above are based on the Agreement, the PTR, the
Wells Demand, the CDC/SBA Demand, the Garcia Invoices, the
Insurance Invoice, and the Estimated Closing Statement.

16.   Item 14 of the PTR references a lease to Distinctive
Financial.  Distinctive Financial is a chapter 7 debtor in case
no. 1:09-bk-19378-KT.  David Seror is the Chapter 7 Trustee of
the estate for Distinctive Financial.  Mr. Seror has not filed a
motion to assume or assign such lease.  Trustee has discussed the
proposed sale with Mr. Seror and has conformed that Mr. Seror has
no objection to the sale.

17.   The Agreement provides that Trustee will assign to
Buyer and Buyer will assume from Trustee the two current leases
for portions of the Real Property identified as Suite 102 and
Suite 201 (the "Leases").  Trustee is aware of no other leases
for the Real Property.  The tenant at Suite 102 is Shawn Dean
Dubois who is represented by Glenn C. Kelble, Esq.  The tenant at
Suite 201 is Dr. Vernon Lee, individually, and also dba Madera
Ranch Dental Office.  True and correct copies of the leases
Debtor provided to Trustee for these two tenants (with limited
exhibits) are attached as Exhibit H and Exhibit I, respectively,
to the Declaration and incorporated herein by reference.

18.   The Motion seeks approval and authorization for Trustee (a) to execute any and all documents necessary to transfer the Real Property from the Estate to Buyer, or the Highest Bidder at the Hearing on the Motion if it is not Buyer, including the two current leases to commercial tenants, and (b) to pay the debt secured by the First Trust Deed, the debt secured by the Second Trust Deed, delinquent and pro-rated real property taxes, the Broker's Commission, the Other Closing Costs, the Garcia Invoices, and the Insurance Invoice through the Sale Escrow at Encore.

19.   By the Motion, Trustee seeks the Court's approval to sell the Real Property free and clear of liens and on an "AS-IS, WHERE-IS" basis to Buyer for the Sales Price of $2,225,000.00, and pursuant to the other terms and conditions set forth in the Agreement, or to the Highest Bidder for the highest bid as determined at the Hearing.

20.   The Motion requests that all remaining proceeds from sale of the Real Property be issued by Encore to Trustee for deposit in Estate bank accounts.  This amount is estimated to be approximately $51,289.25 as set forth in the Estimated Closing Statement (see Exhibit E).

## II.  **ARGUMENT**

A.   The Court Has Authority to Approve the Sale of the Real Property Free and Clear of Liens Pursuant to 11 U.S.C. §§ 363(b) and (f).

Generally, Trustee relies on 11 U.S.C. § 363(b) in proposing to sell the Real Property outside the ordinary course of business after notice and the opportunity for a hearing.  In addition,

1    Trustee relies on 11 U.S.C. § 363(f) in proposing to sell the

2    Real Property free and clear of any interest and liens.

3    The Trustee seeks this Court's authority to sell the Real

4    Property free and clear of liens pursuant to 11 U.S.C.

5    §§ 363(b) and (f) of the Bankruptcy Code.  11 U.S.C.

6    § 363(b) provides that:

7           [t]he trustee, after notice and a hearing, may
            use, sell, or lease, other than in the
8           ordinary course of business, property of the
            estate.

9

10   In addition, 11 U.S.C. § 363(f) provides that:

11          [t]he trustee may sell property. . . free and
            clear of any interest in such property of an
12          entity other than the estate, only if -. . .

13          (1)   applicable nonbankruptcy law permits sale
                  of such property free and clear of such
14                interest;. . .

15          (2)   such entity consents;. . .

16          (3)   such interest is a lien and the price at which
                  such property is to be sold is greater than
17                the aggregate value of all liens on such
                  property;
18
            (4)   such interest is in bona fide dispute; or
19
            (5)   such entity could be compelled, in a
20                legal or equitable proceeding, to
                  accept a money satisfaction of such
21                interest.

22       11 U.S.C. § 363(f)(2) authorizes Trustee to sell the

23   property of a chapter 7 bankruptcy estate free and clear of any

24   interest held by an entity other than a debtor's estate if such

25   entity consents to the sale.  Debtor was the only holder of title

26   to the Real Property as of the Petition Date.  The PTR does have

27   a record of a lease to Distinctive Financial.  David Seror,

28   chapter 7 trustee of the bankruptcy estate of Distinctive

Financial has confirmed that he has no objection to the sale.
Further, Distinctive Financial has vacated its former office at
the Real Property and is no longer operating its business.

Trustee proposes to assign to Buyer the two current
commercial leases for tenants who occupy Suite 102 and Suite 201,
respectively, at the Real Property.  The Agreement provides for
Trustee to assign and Buyer to assume such leases.  The two
commercial tenants are not affected by the proposed sale.

11 U.S.C. § 363(f)(3) authorizes Trustee to sell the
property of a chapter 7 bankruptcy estate free and clear of any
interest held by an entity other than a debtor's estate if such
interest is a lien and the price at which the property is to be
sold is greater than the aggregate value of all liens on the
property.

In the instant case, Trustee proposes to sell the Real
Property for the Sales Price of $2,225,000.00.  If approved by
the Court, proceeds from the sale as proposed by Trustee will
provide sufficient funds to pay off all liens.  Trustee has
received the Wells Demand and the CDC/SBA Demand (in the reduced
amount that CDC/SBA has agreed to accept as payment in full).
Encore assisted Trustee in preparing the Estimated Closing
Statement that illustrates the proposed distributions from
Escrow, including the disbursements to all holders of liens.

B.    <u>Sale of the Real Property Free and Clear of Liens is in the
      Best Interest of Creditors of the Estate</u>.

Sale of the Real Property pursuant to the terms of the
Agreement is in the best interest of creditors with claims
against the Estate for the following reasons:

1        1.   The Real Property is the primary asset of the Estate.

2    As a result, sale of the Real Property will minimize

3    administrative expenses to the Estate by resolving the Estate's

4    administration in a speedy and cost-efficient manner for the

5    benefit of secured lienholders and other creditors of the Estate.

6        2.   Sale of the Real Property will eliminate the risk and

7    uncertainty of future fluctuations in the real estate market.

8        3.   Sale of the Real Property pursuant to the terms of the

9    Agreement is in the best interest of the unsecured creditors of

10   the Estate because the net proceeds paid to the Estate will be

11   available for distribution to such creditors who hold allowed

12   claims.

13   D.   <u>Notice of the Sale is Adequate</u>.

14       Trustee is serving notice of the sale on Debtor, Debtor's

15   counsel, the Office of the United States Trustee, all creditors,

16   and all other interested parties.

17   E.   <u>Buyer Should Be Deemed a "Good Faith Purchaser" Pursuant to</u>

18       <u>11 U.S.C. § 363(m)</u>.

19       11 U.S.C. § 363(m) provides:

20           The reversal or modification on appeal of an
    authorization under subsection (b) or ©) of this section
21       of a sale or lease of property does not affect the
    validity of a sale or lease under such authorization to
22       an entity that purchased or leased such property in good
    faith, whether or not such entity knew of the pendency of
23       the appeal, unless such authorization and such sale or
    lease were stayed pending appeal.

24

25       A good faith buyer "is one who buys 'in good faith' and 'for

26   value.'"  <u>Ewell v. Diebert (In re Ewell)</u>, 958 F.2d 276, 281 (9th

27   Cir. 1992) (<u>citing</u> <u>In re Abbotts Dairies of Pennsylvania, Inc.</u>,

28   788 F.2d 143, 147 (3d Cir. 1986)). "[L]ack of good faith is

[typically] shown by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" Id. (quoting Community Thrift & Loan v. Suchy (In re Suchy), 786 F.2d 900, 902 (9th Cir. 1985)).

In the instant case, Buyer is buying in good faith, and has not colluded with the Trustee or anyone else regarding the subject sale.  The anticipated sale of the Real Property has been negotiated with the Buyer in "arm's-length" discussions. Moreover, Trustee is informed and believes that Rodeo has actively marketed the Real Property by listing the Real Property on Loopnet and through other commercially reasonable means of selling commercial real property.  Further, Rodeo has presented all offers to Trustee.  The Agreement is the highest and best offer Trustee has received as of June 16, 2010.  At the Hearing, there will be an opportunity for overbids to ensure that the Real Property is sold for the highest price possible.  Based on such facts and circumstances, Trustee believes that this Court can properly determine the Buyer as a "good faith purchaser" pursuant to 11 U.S.C. § 363(m).

If Buyer is not the Highest Bidder at the Hearing, Trustee will request an opportunity at the Hearing for the Court to make a finding that the Highest Bidder is  a "good faith purchaser" pursuant to 11 U.S.C. § 363(m).

### III.  CONCLUSION

**WHEREFORE,** Trustee requests that the Court enter an order providing that:

A.   The Motion is approved in its entirety;

B.    Trustee is authorized to execute any and all documents,
including, but not limited to, the Agreement, or such other
agreement made as an offer by the Highest Bidder, escrow
instructions, and a quit claim deed on behalf of the Estate,
necessary to sell and transfer the Real Property to Buyer or to
the Highest Bidder at the Hearing if Buyer is not the Highest
Bidder, free and clear of all liens and interests, for the Sales
Price, or, if there is overbidding at the Hearing, for the amount
of the highest bid, and pursuant to the terms and conditions set
forth in the Agreement or such other agreement made as an offer
by the Highest Bidder and, if the Highest Bidder defaults, to the
next highest bidder for the next highest bid;

C.    If the Highest Bidder fails to close escrow within ten
(10) days after entry of the Sale Order, the Highest Bidder will
forfeit the Earnest Money Deposit and the next highest bidder
shall pay the next highest bid to purchase the Real Property;

D.    Trustee is authorized to pay the debt secured by the
First Trust Deed. the debt secured by the Second Trust Deed in
the reduced amount, delinquent and pro-rated real property taxes,
the Garcia Invoices, the Insurance Invoice, the Broker's
Commission based on 3.5% of the Sales Price to be paid to Rodeo
or the broker's commission applicable for the highest bid, Other
Closing Costs, and other valid liens, through the Sale Escrow at
Encore; and

E.    The remaining proceeds from sale of the Real Property
be issued by Encore to Trustee for deposit in Estate bank
accounts;

F.    Buyer, or Highest Bidder if other than Buyer, is

1  entitled to the protections of § 363(m) of the Bankruptcy Code;

2      G.    Notice of the Motion and of the sale is proper and

3  adequate;

4      H.    The stay of the order approving this Motion imposed by

5  Federal Rule of Bankruptcy Procedure 6004(h) and any other

6  applicable bankruptcy rules is waived; and

7      I.    Such other and further relief as the Court may deem

8  just and appropriate.

9  DATED: June 16, 2010

Nancy Hoffmeier Zamora,
Chapter 7 Trustee

## DECLARATION OF NANCY HOFFMEIER ZAMORA

I, Nancy Hoffmeier Zamora, declare:

1.   I am the duly appointed, qualified and acting Chapter 7 Bankruptcy Trustee of the above-entitled case.  If called upon as a witness I could and would competently testify to the matters stated herein.

2.   All capitalized terms used in this declaration have the meanings ascribed to them in the foregoing Motion to Sell Real Property Free and Clear of Liens, Subject to Overbid (the "Motion") and the Memorandum of Points and Authorities in support of the Motion unless otherwise defined herein.

3.   I have reviewed all of the facts contained in the Motion and the Memorandum of Points and Authorities and to the best of my knowledge all of them are true and correct.

4.   A true and correct copy of the Agreement is attached as Exhibit A to this declaration and incorporated herein by reference.

5.   True and correct copies of Debtor's Schedules A and D are attached as Exhibit B to this declaration and incorporated herein by reference.

6.   A true and correct copy of the PTR is attached as Exhibit C to this declaration and incorporated herein by reference.

7.   A true and correct copy of the CDC/SBA Demand is attached as Exhibit D to this declaration and incorporated herein by reference.

8.   A true and correct copy of the Estimated Closing Statement, with HUD statement, is attached as Exhibit E to this

declaration and incorporated herein by reference.

9.   True and correct copies of the Garcia Invoices are attached as Exhibit F to this declaration and incorporated herein by reference.

10.   A true and correct copy of the Insurance Invoice is attached as Exhibit G to this declaration and incorporated herein by reference.

11.   A true and correct copy of the lease of Suite 102 of the Real Property provided to me by Debtor is attached as Exhibit H to this declaration and incorporated herein by reference.

12.   A true and correct copy of the lease of Suite 201 of the Real Property (without exhibits except the Option Rider) is attached as Exhibit I to this declaration and incorporated herein by reference.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 16th day of June, 2010, at Los Angeles, California.

_____
NANCY HOFFMEIER ZAMORA